UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No. 24-60736-CIV-SMITH/HUNT
IN ADMIRALTY

BANK OF AMERICA, N.A.,
a national banking association,

Plaintiff,

vs.

BURRELL DIVERSIFIED INVESTMENTS, LLC,
a Delaware Limited Liability Company;
DYLAN LUCY, a 2020 66-foot Zeelander
motor Yacht, Official Number 1294109,
her parts, appliances, equipment,
substitutions, etc., *in rem*,

Defendants.
_______________________________________/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on Plaintiff's Verified Motion for Attorney's Fees, Additional Interest and Additional Custodia Legis Expenses, [and] for Entry of Final Deficiency Judgment. ECF No. 61. The Honorable Rodney Smith referred Plaintiff's Motion to the undersigned for a report and recommendation. ECF No. 62; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. Upon thorough review of Plaintiff's Motion, the case file, and applicable law, the undersigned respectfully RECOMMENDS Plaintiff's Motion be GRANTED IN PART and DENIED IN PART as set forth below.

On April 14, 2025, the Court previously entered its Order Granting Plaintiff Bank of America's ("Plaintiff" or "The Bank") Renewed Motion for Default Judgment Against Dylan Lucy Official No. 1294109 and Burrell Diversified Investments LLC ("BDI"), ECF No. 43,

and corresponding Final Judgment, ECF No. 44, against BDI for $3,709,483.31, not including per diem contract rate interest from after January 30, 2025, attorney's fees, court costs, and additional custodial costs.

In the Final Judgment, the Court awarded $101,361.85 for *custodia legis* costs. The Court retained jurisdiction to, among other things, issue a deficiency judgment against BDI if such circumstances arise; enter a separate or supplemental judgment for the additional sums incurred post judgment; and to enter any other orders necessary or proper to enforce not only the Final Judgment, but also any deficiency judgment entered by this and/or any separate final judgment at for any additional sums; and to enter any other order or judgment addressing any motion for an award of the reasonable attorney's fees and costs incurred by Plaintiff in enforcing its legal rights and remedies under the Loan Documents. ECF No. 44. The Court explicitly found that Plaintiff is entitled to recover its reasonable attorney's fees and costs incurred in connection with this action. *Id.*

Plaintiff now asks this Court for an additional award of $119,440.52 in attorney's fees, $205,159.50 for additional *custodia legis* expenses for the substitute custodian, and a $225,000.00 commission to the custodian for marketing the U.S. Marshal Sale. It also asks for $46,309.94 in per diem contractual interest accruing from January 31, 2025, through the date of the entry of the Final Judgment on April 14, 2026 (representing 74 days at the per diem rate of $625.81 identified in the Final Judgment); and $47,722.65 in statutory post-judgment interest on the amount set forth in the Final Judgment (for the time period from April 15, 2025, to the date of the Clerk's Confirmation of Sale of the Vessel on August 12, 2025)), for a total additional award of $643,632.61.

Plaintiff additionally asks this Court to find that the fair market value of the Dylan Lucy Official No. 1294109 (the "Vessel") was the $2,250,000.00 the Vessel sold for at the U.S. Marshal Sale on July 18, 2025.

The undersigned addresses each request in order below.

## I. <u>Attorney's Fees</u>

Plaintiff seeks $119,440.52 in attorney's fees pursuant to both a Loan Agreement and the Preferred Ship Mortgage, both of which contain clauses entitling Plaintiff to such fees. Plaintiff avers that the amount of time expended by the attorneys in this matter has been reasonable and appropriate in light of the complexity of the litigation, and the amounts due. It notes that this litigation has been ongoing for over a year and has involved various issues with intervening third parties. The Court has previously determined that Plaintiff "is entitled to recover its reasonable attorney's fees and costs incurred in connection with this action, pursuant to (1) the Loan Documents . . . attached to the Verified Complaint, and (2) Florida Statutes § 57.041." ECF No. 44 at 10.

This Court uses the lodestar method to calculate reasonable attorney's fees, multiplying a reasonable hourly rate by the number of hours reasonably expended. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). A reasonable hourly rate for attorney's fees is determined by evaluating "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *see also ACLU v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999) ("The significant disparity in their experience should be reflected in the rates awarded."); *Brown v. Sch. Bd.*

*of Broward Cty.*, No. 08-61592-CIV-DIMITROULEAS, 2010 WL 3282584, at *3 (S.D. Fla. June 30, 2010) (reducing the requested hourly rate).

The movant bears the burden of proving the requested rate is consistent with prevailing market rates. *Norman*, 836 F.2d at 1299. In addition to evidence presented by the movant, a court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)) (internal quotation marks omitted). Thus, even when the submitted evidence is deficient, a court has the power to make a fee award without the need of further pleadings or an evidentiary hearing. *Id.*

Moreover, "[a]n evidentiary hearing is unnecessary for issues about which the district court possesses sufficient expertise: 'Such matters might include the reasonableness of the fee, the reasonableness of the hours, and [the] significance of the outcome.'" *Thompson v. Pharmacy Corp. of Am.*, 334 F.3d 1242, 1245 (11th Cir. 2003) (quoting *Norman*, 826 F.2d at 1304). The primary issues here are the reasonableness of counsel's hourly rate and the reasonableness of the number of hours expended, matters over which this Court possesses sufficient expertise.

Plaintiff seeks attorney's fees based upon professional services rendered. Plaintiff requests hourly rates for three attorneys who claim to have worked on this case for a total of 426.1 hours.[1]

[1] Although the billing records show a total of 499.10 hours incurred, Plaintiff has deducted 73 hours of their own accord. ECF No. 61-3 at 5.

a. Reasonable Hourly Rate

When "determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,'" this Court must consider twelve factors. *Meyrowitz v. Brendel*, No. 16-81793-CIV-MARRA, 2018 WL 4440492, at *3 (S.D. Fla. Sept. 17, 2018). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
> The reasonable hourly rate is defined as the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The fee applicant bears the burden of establishing the claimed market rate. The Court may use its own experience in assessing the reasonableness of attorney's fees.

*Id.* (internal quotations and citations omitted).

This Court has considered the attorneys' affidavits and the twelve factors. Because of their practice, reputation, and legal experience, counsel request the following hourly rates:

- Baris J. Okcular, a partner at Liebler, Gonzalez and Portuondo, requests compensation for 195.7 hours at a rate of $300.00 per hour.
- Reid A. Schaeffer, also a partner at Liebler, Gonzalez and Portuondo, requests compensation for 31.4 hours at a rate of $300.00 per hour
- Nicole Zimmerman, a Senior Attorney at Liebler, Gonzalez and Portuondo, requests compensation for 199 hours at a rate of $290.00 per hour.

Plaintiff provided relevant uncontested caselaw regarding comparable fee awards which indicate the proposed rates meet, or are slightly below, the rates previously awarded in the Southern District. *See, e.g.*, *Vice City Marina, LLC v. Philippians, LLC*, No. 20-23800-CIV-SCOLA/TORRES, 2021 WL 1739294, at *4 (S.D. Fla. Mar. 18, 2021) (awarding comparable rates in a maritime default judgment case), *report and recommendation adopted*, No. 20-23800-CIV-SCOLA/TORRES, 2021 WL 1739029 (S.D. Fla. May 3, 2021) (collecting cases). Accordingly, the requested hourly rates should be approved.

b. Hours Reasonably Expended

Upon determination of the hourly rate, a court must determine the reasonable number of hours expended in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Inquiry into the reasonable number of hours focuses on an attorney's exercise of "billing judgment," such as the attorney's exclusion of hours "that would be unreasonable to bill to a client, and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (internal quotation marks omitted) (emphasis omitted). Fee applicants must exclude hours that were not "reasonably expended" or that are determined to be "excessive, redundant, or otherwise unnecessary" from their fee calculations. *Hensley*, 461 U.S. at 434.

Examining the docket, it appears Plaintiff is alleging that counsel spent 426.1 hours, or almost eleven forty-hour weeks, on what appears to be a relatively straightforward mortgage repossession ending in a default judgment. The undersigned finds *Hermosilla v. Coca-Cola Co.* to be instructive when considering the hours requested

in the instant action. No. 10-21418-CIV-TORRES, 2011 WL 9364952, at *1 (S.D. Fla. July 15, 2011), *aff'd,* 492 F. App'x 73 (11th Cir. 2012). Faced with a request for high hourly rates billed by multiple attorneys in a fee-shifting context, the *Hermosilla* court—Magistrate Judge Torres—noted that:

> [O]ne can drive from point A to point B in a Ferrari, a BMW, or a Ford Fusion. Which car one chooses is ordinarily a matter of personal style coupled with financial freedom. The successful personal injury or criminal defense lawyer may choose the Ferrari. The average corporate defense lawyer will wisely choose the BMW. But a successful attorney fee applicant can only choose the Ford Fusion. It is quite reliable, consistent, and effective for the task at hand, and will not break the bank. And because of that only the cost of a Ford Fusion is compensable under an attorneys' fee statute based on the American Rule that governs federal litigation.

*Id.* at *10. The undersigned agrees that in a fee-shifting context, resources must be allocated *reasonably,* rather than as in those cases where a well-heeled litigant "knowingly contracts for . . . premium services in exchange for premium hourly rates[, or] bargains for an army of lawyers." *Hermosilla*, 2011 WL 9364952, at *10.

"If the court concludes that the number of claimed hours is excessive, it may engage in 'an across-the-board cut,' so long as it provides adequate explanation for the decrease." *Galdames v. N & D Inv. Corp*., 432 F. App'x 801, 806 (11th Cir. 2001). Courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

Examining the docket reveals that the case had mostly resolved by default judgment within two months of its filing. BDI never made an appearance in the case, and the Clerk entered default against both BDI and the vessel just over two months after the case was filed. Plaintiff initially moved for default judgment three months after filing, but

that attempt was denied as noncompliant under Local Rule 7.1(a)(2) because Plaintiff failed to provide the Court with a proposed order.

Although the case did require negotiations with other claimants, the undersigned cannot see how a case that essentially resolved two months after it was filed could justify the more than ten full weeks of work – more than is required of many trials – documented in Plaintiff's almost 300 pages of billing records. Still, given the nature of the case and value of the vessel, and some thorny settlements worked out with other claimants, it is in the undersigned's experience not necessarily unreasonable for one partner to have put half of that amount of work to it. Therefore, the undersigned finds a 50 percent across-the-board cut in hours appropriate, resulting in 213.1 hours compensable at the partner's rate. *See Gomez v. Rendiles*, No. 24-22083-CIV-SMITH/HUNT, 2025 WL 3282530, at *4 (S.D. Fla. Aug. 28, 2025), *report and recommendation adopted*, No. 24-22083-CIV-SMITH/HUNT, 2025 WL 3282532 (S.D. Fla. Sept. 9, 2025). Such a cut rewards Plaintiff for what must have been a significant amount of work on the case while also fulfilling the Court's obligation to ensure the fees shifted to the opposing party are reasonable.

c. <u>Lodestar Amount and Adjustment</u>

"[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010). The Supreme Court has specifically identified three circumstances that may justify a deviation from the lodestar amount: 1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value,

as demonstrated in part during the litigation"; 2) "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted"; and 3) when there are "extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees." *Id*. at 554–56.

In this case, the undersigned finds no reason to depart from the lodestar calculation. Therefore, Plaintiff should be compensated for 213.1 hours of work, at a rate of $300.00 per hour, for a total of $63,930.00.

**II. <u>Custodia Legis Expenses and Custodial Fees</u>**

Bank of America alleges that it paid a total of $531,521.35 for the substitute custodian, for all *custodia legis* expenses, the commission for U.S. Marshal Sale, and necessaries for the vessel at issue. The Court previously awarded $101,361.85 for custodia legis costs in the Final Judgment. ECF No. 44. The Bank now requests $205,159.50 for additional *custodia legis* expenses for the substitute custodian, and a $225,000.00 commission to the custodian for marketing the U.S. Marshal Sale.

The Vessel, a 66-foot yacht, was under arrest from May 25, 2024, to August 12, 2025, the date of the Clerk's confirmation of sale, a period of 444 days. During her arrest, charges amounted to $308.16 per day for storage/moorage, $50.00 per day in custodial charges, and other expenses and extensive repair to ready her for the U.S. Marshal's auction. The undersigned has reviewed the Exhibits documenting these expenses, ECF No. 61-3 at 285–92, and compared them to the amounts already deemed reasonable and awarded by this Court, ECF No. 42-1 at 114-20, 44. The undersigned finds that the currently requested storage/moorage and custodial fees are directly comparable to those already approved, as well as to other similar awards. *See, e.g., Staats v. M/Y*

*PERSEVERANCE II*, No. 16-62095-CIV-BLOOM, 2017 WL 7796314, at *2 (S.D. Fla. May 17, 2017) (approving a custodial charge of $250.00 per day and the dockage and electricity fee of $333.00).

However, there are some expenses listed that do not appear to be in line with those already approved. Between July 14, 2025, and July 24, 2025, the Vessel incurred $50,383.95 in expenses for "Cable Marine repairs" as well as $1,750.00 for "Marine Tech," $270.00 for packing and storing personal property on the ship, and $805.00 for a "sea tow." Although not explained, it is reasonable to believe these expenses were in preparation for the July 18, 2025 sale.

"*Custodia legis* expenses are paid from the fund within the court's control only to the extent that they are reasonable." *Julien v. M/Y Pacific II*, No. 09-22457-CIV-MORENO/TORRES, 2010 WL 11647170, at *5 (S.D. Fla. July 2, 2010). Indeed, "the Court must . . . use its 'broad equitable powers' to ensure that the expenses are reasonable, and that justice is served." *Robbie's of Key West v. M/V Komedy III*, No. 19-10193-CIV-MOORE, 2020 WL 13389894, at *3 (S.D. Fla. Nov. 4, 2020) (cleaned up).

The Local Admiralty Rules provide in relevant part as follows:

> **Limitations on the Handling, Repairing and Subsequent Movement of Vessels or Property**. Subsequent to the arrest or attachment of a vessel or property, and except as provided in Local Admiralty Rule E(10)(a), no person may handle cargo, conduct repairs, or move a vessel without prior order of Court.

S.D. Fla. Adm. R. E(10)(b).

Thus, absent an emergency, *see* S.D. Fla. Adm. R. E(11)(a), movants were generally supposed to seek the Court's permission prior to engaging, towing, or repairing the Vessel. This Court has reviewed the docket and finds no Order granting permission

for such activities.[2] As such, $53,208.95 of the requested amount should not be awarded. Plaintiff should therefore be awarded only $151,950.55 ($205,159.50 - $53,208.95) in additional *custodia legis* expenses.

As for the $225,000.00 commission to the custodian for marketing the U.S. Marshal Sale, Plaintiff has documented the commission via invoice. ECF No. 61-3 at 294. Plaintiff avers that Paragraph 29 of the Default Final Judgment authorizes the collection of expenses related to marketing and advertising the Vessel. ECF No. 44.

Although the Court appointed the substitute custodian, ECF Nos. 10, 11, and authorized certain expenses, it is questionable at best that the Court contemplated an award of a 10 percent commission to the substitute custodian. The undersigned notes that Plaintiff sought no express approval of such an agreement. Plaintiff never submitted a contract evidencing a 10 percent commission, and the Court never approved such a rate. The amount requested dwarfs the U.S. Marshal's commission and is significantly higher than the more common 6 percent commission more often requested by said custodian and approved in this district. *See, e.g., Asaulenko v. M/V ATLANTICA*, No. 04-61257-CIV-KLEIN, 2005 WL 8155329, at *3 (S.D. Fla. Mar. 18, 2005) (approving a 6 percent sales commission); *Century Bank. v. M/V SUMMER 69*, No. 23-61616-CIV-SINGHAL/MCCABE, 2026 WL 2170457, at *1 (S.D. Fla. May 22, 2026) (noting National

---

[2] To be sure, the Court did order that "[t]he U.S. Marshal's fees, poundage and expenses, including any and all costs incurred in keeping the Vessel while under arrest and substitute custodian fees, and all expenses incurred in advertising and arranging the sale of the Vessel, shall be deemed administrative expenses of the U.S. Marshal." ECF No. 44 at 8. However, the Court nonetheless required "confirmation of these expenses by the Court," before they could be counted as costs of *custodia legis*. *Id.* The undersigned does not read this as a blanket permission freeing Plaintiff of their obligation under the Local Rules.

Liquidators' 6 percent commission). Plaintiff also cites no case law for the higher amounts requested, and the undersigned has likewise found none that would justify such an award absent express approval. Again, the Court must "ensure that the expenses are reasonable, and that justice is served." *Robbie's of Key* West, 2020 WL 13389894 at *3 Plaintiff should therefore be awarded only a 6 percent commission, or $135,000.00, as a reasonable commission to the custodian.

Accordingly, Plaintiff is entitled to $286,950.55 ($135,000.00 + $151,950.55 in additional *custodia legis* and custodial commission expenses.

**III. <u>Interest</u>**

Finally, Plaintiff requests $46,309.94 in per diem contractual interest accruing from January 31, 2025, through the date of the entry of the Final Judgment on April 14, 2026, as well as $47,722.65 in statutory post-judgment interest from April 15, 2025, to the date of the Clerk's Confirmation of Sale of the Vessel on August 12, 2025. The undersigned finds such an award was contemplated in the original final judgment, and therefore Plaintiff's request should be granted, and Plaintiff should be awarded total accrued interest of $94,032.59.

**IV. <u>Final Deficiency Judgment</u>**

On July 18, 2025, the Vessel sold at auction for $2,250,000.00. ECF No. 52. Plaintiff now asks that Defendant be credited the amount from the sale of the Vessel, $2,250,000.00, that this Court deduct any amounts owed under the Final Judgment (as increased by any Order on this Report and Recommendation), and then enter a final deficiency judgment against Plaintiff for any remainder.

The undersigned notes that this amount is significantly higher than valuation of the vessel by Plaintiff's surveyor. ECF No. 61-6 at 3. Plaintiff nonetheless acknowledges "generally, the sale price is an automatic determination of the amount to be deducted from the debt when determining the amount of the deficiency." *Wilmington Tr. Co. v. M/V Miss B. Haven V*, 760 F. Supp. 2d 364, 366 (S.D.N.Y. 2010) (citing *Heller v. O/S Sonny V*, 595 F.2d 968, 971 (5th Cir. 1979)). The Court should therefore credit the Defendant BDI $2,250,000.00 for the sale amount of the Vessel toward the amounts due.

Per the Court's Final Judgment, the amount due to Plaintiff is $3,709,483.31. The undersigned here recommends that amount be increased by $444,913.14 ($286,950.55 + $94,032.59 + $63,930.00) for the reasons stated above, for a total Final Judgment award of $4,154,396.45. "Section 954 [of the Ship's Mortgage Act] provides jurisdiction for an *in personam* deficiency judgment against the mortgagor, should the value of the vessel fall short of the mortgage." *Dietrich v. Key Bank, N.A.*, 693 F. Supp. 1112, 1114 (S.D. Fla. 1988), *aff'd*, 72 F.3d 1509 (11th Cir. 1996). This Court has already determined that "[i]f the proceeds of the sale of the Vessel, after deduction of the expenses and other charges . . . do not satisfy the Final Judgment, Plaintiff, Bank of America, may seek a deficiency judgment against Defendant BDI." ECF No. 44 at 9. The Court should therefore enter a Final Deficiency Judgment against BDI in the amount of $1,904,396.45 ($2,250,000.00 - $4,154,396.45).

**RECOMMENDATION**

Accordingly, it is hereby RECOMMENDED that:

The Court should increase Plaintiff's Final Judgment by $444,913.14, resulting in an amended award total of $4,154,396.45, due to additional *custodia legis* expenses, attorney's fees and other permitted expenditures.

The Court should find that the value of the vessel is $2,250,000.00, and Defendant should be credited that amount from the sale of the vessel.

The Court should enter an amended Final Deficiency Judgment in the amount of $1,904,396.45. In accordance with Federal Rule of Civil Procedure 58, a Final Deficiency Judgment in favor of Plaintiff/Judgment Creditor, Bank of America, N.A., should be entered separately.

The Court should reserve and retain jurisdiction over the parties and this cause to award Bank of America post-judgment interest pursuant to 28 U.S.C. §1961 from August 12, 2025, forward against the Defendant, Vessel and BDI, until the amounts due and owing Bank of America under the Final Judgment and any subsequent Order are satisfied in full.

The Court should reserve and retain jurisdiction over the parties and this cause to award Bank of America additional reasonable attorney's fees and costs that Bank of America may incur in enforcing the Loan Documents and/or attempting to collect upon the final judgments, as entered and/or amended hereby or due to any pending motions in this cause.

Within seven (7) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above

findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 14th day of August 2026.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Honorable Rodney Smith
All Counsel of Record